Mr. Thomas, the technology has been working well, but if something that isn't clear or doesn't seem to be working, why sing out so we can make sure this goes right? You have the floor. Your Honor, may it please the Court, I'm of course Mark Thomas and I have the responsibility and honor of representing Liberty Mutual Insurance Corporation and we're the solicitude is fact specific and so I thought I would start with the facts because it's important for determining what you have in here to know that this is an assigned risk situation and that means that my client was volunteered by the state to insure the Dubuque Barge Company. That also meant that unlike in most circumstances, there was no underwriting undertaken and the information upon which the premium was based was the information provided by Dubuque Barge. Important for our consideration is the fact that people later, recipients of employees are not covered by the state workers compensation system. So what happens to the policy period here under the assigned risk plan? Is it like a typical one year renewable policy? Yes, Your Honor, there's three separate one-year policies at issue here and important is that there's three folks who were listed as Jones Act employees by their employer in the initial assigned risk situation that later filed for comp claims and they are described by Dubuque Barge now as being simply notification to Liberty that there was an injury and not a claim but the record is clearly more than that. Dubuque Barge argued in response to a Liberty Mutual pushback that said, hey, these are guys that you listed as Jones Act employees. Dubuque Barge took the position that it is important to know what was going on with the employee at the time of injury to determine whether or not it was a Jones Act employee situation or a comp employee situation. And so my client did something that came back to bite and they believed the insured when the insured said that these are not Jones Act situations but are instead comp situations. Let me, I think I understand the setting here and the conflicting theories. What troubles me or I'm ignorant about is if the Dubuque Barge's theory is correct about the, as I understand that the Jones Act coverage, there is a 30% test that applies at the time of an injury to determine whether an employee was covered by the Jones Act. And if I've got that right or close to right, if that applies under your policy, how would it, how does it affect the premium determination process? Maybe your client has never applied that, but if it applied in the future, in other words, when the premium is set, you don't know. That's the problem with the case, your honor, is when the premium is set, we rely on the insured. The premium is also tentative and it's subject to audit, at least one. I guess there were two here. So it seems to me that the impact of the district court's decision and what Dubuque Barge argued is it throws a lot more of the premium process at the audit stage. And if you understand it, and maybe there's nothing in the record, what impact would that have on your client's business? Well, it would turn the concept of insurance on its head, your honor, because... No, it wouldn't. No, no way. A lot of things get, a lot of things get, a lot of premiums are always somewhat tentative, not always, but many premiums are tentative. Well... And are subject to final audit. But the insurance company insures risk, not occurrence. So a final audit under the theory that the plaintiff and Dubuque Barge originally offered was, well, we can sort this out after the fact by seeing who claimed what. You're giving me a conceptual answer and my attempt was to ask a practical question. How would this play, what's the significance of this issue to the assigned risk insurance world? Well, the significant part of what happened here is that by doing what Dubuque Barge did, they put all of the employees that were listed as Joe's Act potential insured for Liberty Mutual. Your theory is, as I would call, massive overreaching. But I'm trying to get at the Well, so let's just look at this specific situation. We have three folks who were listed as Jones Act employees. We're wanting premiums for all those employees and those similar situated, but with all due respect to the district court, the court was focused on the idea that we weren't claiming to get reimbursed for the comp payments. What we were claiming is what we're entitled to, which is the premiums that deal with the risk. The premiums for these three guys are still not paid, even though the risk clearly exists. Counsel, are you seeking return of the payments made on these three people or are you just seeking the premiums on all Jones Act employees because you're claiming there was a risk for all Jones that the premiums should reflect the risk? And it's important to note that we are able to But after the fact, they will reflect the risk. They will only reflect what happened, John, not the risks. Let me put it this way. If I have State Farm for my car insurance and I don't have an accident during the year, State Farm hasn't had to pay any money, but they were still on the risk for the whole year. And I don't get to ask at the end of the year for my money back because they didn't do me any good because I didn't have an accident. But Counsel, are you seeking premiums for risk for Jones Act work performed by the seaman, by work that would be covered by the Jones Act? No, our problem, Your Honor, is reflective of a situation created by Dubuque Barge. When they list people as Jones Act employees and it would have been fixed perfectly if they had said, well, these guys are Jones Act employees. We listed them as Jones Act employees and they're staying Jones Act employees and you don't have to pay. But when you say they can be either or at any point in the insurance period, that brings Forget the risk stuff. Your client could have objected to the claims. Your client could have put these claimants and or Dubuque Barge in the workers' comp process to the 30% test, in which case, and the ruling would have been, I don't care, their jobs didn't change sufficiently, they were still seaman claim denied, and now the risk never materialized. That's just like when there's a car accident and you put in a claim to State Farm and they send out their guys to blame, successfully, and so they don't have to pay your collision coverage. The risk was there, perhaps, but it didn't materialize because of the claims and audit process. Well, our position would be, and supported by the Zurich case that we've cited to the court, which is if you get into the business of arguing about risk and arguing about coverage situation. But aren't you putting the policy holder here in the driver's seat in terms of claims determination when under the terms of the policy under the law, generally, it's the carrier who's in charge and in the driver's seat on claims determination. Well, we would be able to do that if it was an ordinary course where you could do the underwriting first and you could determine, well, here's our specific plan. You're going back to underwriting, but we're talking about the claims with respect to these three individuals that Liberty paid on. And you're saying, well, because Dubuque Barge took the position that they're covered, well, Dubuque Barge is essentially stopped regardless of what the policy says and regardless of what coverage decision, not underwriting decision, but coverage decision that Liberty made. Well, the policy says that we're entitled to receive premiums for any person who's covered by the policy or any situation that creates risk of coverage. And when they make the claim as they did, that these are not Jones Act employees now, they're comp employees, that claim can be applied to everybody. And I notice I'm out of time here. Unless there's a question, I'll let you go. Thank you. Thank you. Mr. Knudson. To please the court, the statement made by Marcus Murphy, the manager of Dubuque Barge was incorrect in terms of what the law provided. He did not, by his ability to assume that these employees were covered by workman's compensation change. Who's Mr. Murphy? You just jumped somewhere. I'm sorry. He's the manager who made the statement and advocated for his employees that they were not semen when they were doing the job that caused them injury, that they in fact now were eligible for workman's compensation. He was wrong in making that statement. That's your guy. That's our guy. All right. And then what happened is that Liberty Mutual, who we assume knew the law, capitalized on that mistake by claiming, well, we're going to pay the three people that you say were not semen, were actually covered by workman's compensation, and then we're going to charge you. Wait a minute. I don't remember from the briefs learning that Murphy was wrong, just that he wasn't challenged. I thought the whole point was if you sufficiently changed the job being performed by someone who was a semen or may still be called a semen, he's not protected anymore by the Jones Act. And I thought that was an unresolved issue here because LM Insurance didn't challenge it in the comp process. Now you're saying, oh, we screwed up and they paid the bill. And they used that as precedent for then charging the $1,290,000. Counsel, where is the district court finding that Mr. Murphy was wrong? I don't think he said it. We argued it at that time, and it was mentioned by Liberty Mutual in their brief that we're now claiming that he was wrong. He was wrong for a couple reasons. First of all, under Chapter 85.1 sub 6 of the Iowa Code, which is our workman's compensation statute, an employer cannot assume a worker's compensation liability for people in their employ who are covered by an act of Congress. Congress has preempted this entire field for semen and long that his statement to them could have caused them to pay benefits to these semen. He was simply plain wrong. And they, instead of filing a motion to dismiss in the district court in Iowa, or in the worker's compensation proceedings, saying that there is no jurisdiction here, subject matter jurisdiction for worker's compensation to apply, because these people are exempt from worker's compensation by statute, and also by the preemption of the federal government. And that, counsel, is when they're performing semen work. Correct? Work covered by the Jones Act. Is that right? And therein lies the confusion. Right. But no, but let's take the next step. So can your client require them to perform work that's not covered by the Jones Act? If it's related to service to a vessel, it is Jones Act work, whether it looks like it or not. I understand the test. I understand that. But let's say there's, can your client direct them to perform work that's indisputably not covered by the Jones Act, not related to a vessel? I'm sure he can. I'm sure he can. Nothing prohibits that. Okay. So in that situation, then what policy covers them for com? Well, they are still, even though they're doing so-called non-maritime work, non-covered work by the Jones Act, they are still semen if 30% of their efforts on behalf of their employee is related to a vessel. What if they aren't? What if they aren't 30%? That's the question I've and now completely mysterious answer from you. These three were all semen and they were doing work on water and they were listed as the operators of a vessel. And a vessel in this case is a platform with a dredge where they went all over the maritime area doing construction work. So if they were injured when they were on shore doing other work, they may have been covered by the Longshoremen Act, but that's beside the point. We audited and we showed them on audit, they were all semen. And then what happened is that there was a retrospective audit that was done. And the retrospective audit showed that there was no actual risk for any of these semen and any of the three people that they would in some way move out of that classification into something else. So that's what the flaw in the argument that that second paragraph in the insurance contract of they could have rendered the employer liable for workers' compensation is challenged by the district court where he cites the Zurich case by saying it is whether or not the retrospective audit is to examine the actual risk that occurred. And there was no actual risk that any of these semen would somehow have a workers' compensation-related accident and the workers' compensation would take those pictures. And the reason that Liberty Mutual gave for not challenging that statement by Dubuque-Large was that they were afraid that they would be charged then with bad faith. Well, that's not a good argument. There's no basis for that. They have the right and they challenge that workers' compensation application by a motion to dismiss because the workers' compensation has no jurisdiction. But under the terms of the policy... Council, if you would, I'd like to take this issue down to the level of the policy language. And could you explain to me why these employees do not fit under policy section C1 or C2? C2, as I understand it, states that if Liberty Mutual could be found liable or responsible. And that's the case that we cite the Zurich case for. Because in that case, in Zurich versus MBT, it says the audit after the fact does not determine whether or not there was risk, but whether there was actual risk. And that determination is made based upon what the retrospective audit found as to whether or not these people were semen and covered by the Jones Act, or if they were injured on land, covered by the Longshoremen Act. Council, I'm more interested in the actual language of the policy in the case law here. It seems to me that they don't fit under C1 because they're not employees engaged in work covered by the policy. Is that correct? That's right. It's just a matter of... And what about C2? C2 is whether they could have been covered. And that's where the Zurich case speaks to that by saying this talks then about actual risk, not just could have been, but actually were a risk, which I think has not been explained or dealt with further by the courts. But the Zurich case makes that distinction, as does the district court in Israel. Well, doesn't the language of C2 apply to employees? Independent contractors are not covered in any law controlled or passed by Congress. So that's why the independent contractor... Because these people are employees, right? These people, in this case, the Dubuque Barge, are employees of Newt Marine, which is doing business as Dubuque Barge, yes. Okay. Thank you. Counsel, do you consider American Zurich properly decided? I have not analyzed it, Your Honor, but it seems to me if an insurance company can engage in an after the fact analysis to determine actual risk, that seems to me to be common sense. Why would you do a retrospective audit unless you were trying to determine whether or not there was actual risk, not whether it could have been. Could have been says we're looking forward, actual risk looks back and says what actually was the facts. So I agree with their analysis. I can't state whether or not I agree with the analysis. My time is up. I'll answer more questions. Very good. Thank you, Counsel. Let's see if we got some more little time. Are you on mute, Mr. Thomas? You're on mute. I'm sorry. I'm out of time, but I will... I'll give you a minute. Okay. Thank you. Your Honor, if you turn to page 13 of Judge Robert's decision, he specifically says that the court has no reason to disagree with Newt Marine's position. So that was Marcus, the manager's position, and the court below adopted that position. So I'm somewhat confused because we have the plaintiff's... I'm sorry, we have the appellee's position is adverse to both its client and the court below. The court below said, and I'll be brief, the court below said that you decide after the fact. Our point, and we do believe that Zurich case is correctly decided, our point is that as that court said on page 14 of its decision, the fact that the insurance company is exposed to the risk of defending a worker's compensation claim makes the assessment of retroactive premiums warranted. So our point is that if we have to have the fight every time someone makes a claim, then there is in fact a reason to assess premiums in that situation, and we rely on that Zurich case for this exact point. The last thing I would mention in the amount of time is that the Zurich case involves employees and not independent contractors. Thank you, sirs. Thank you very much. Thank you, counsel. It's frequently litigated, and your argument greatly helped us jump into it, and we'll take the case under advisement. Thank you, your honors.